### STEAM GAUGE & LANTERN CO. *v.* ST. LOUIS RAILWAY SUPPLIES MANUF'G CO.[1]

### SAME *v.* MEYROSE.

*(Circuit Court, E. D. Missouri.   October 24, 1885.)*

1. PATENTS—INJUNCTIONS.

   An injunction *simpliciter* will not be granted in a patent case unless it is made out when *ex parte* that the defendant is guilty of a clear and positive infringement.

2. SAME—A PRINCIPLE NOT PATENTABLE.

   A principle is not patentable. A patentee is always restricted to the particular device by which he has undertaken to avail himself of the beneficial influence of the principle.

In Equity.

Motions for preliminary injunctions.   The above-entitled cases are both suits for the infringement of letters patent of the United States, No. 104,318, of June 1, 1870, and letters patent No. 151,703, of June 9, 1884, granted to John H. Irwin for special devices used in connection with tubular lanterns.   The lanterns manufactured by the St. Louis Railway Supplies Manufacturing Company are manufactured under letters patent No. 246,774, granted to Joseph Hirth, September 6, 1881, and letters patent No. 321,314, granted to F. Reinschmidt, June 30, 1885, and are called the "Eagle" lantern and the "Eagle Lift" lantern.   The Meyrose lanterns are manufactured under letters patent, granted to F. Meyrose in 1879.   Restraining orders in said cases were, in the absence of the United States circuit and district judges, granted by Mr. Justice MILLER, at Block Island, upon an *ex parte* application made in August, 1885.

*E. S. Jenney* and *F. N. Judson,* for complainant.

*Paul Bakewell* and *J. G. Chandler,* for St. Louis Railway Supplies Manuf'g Co.

*Edward J. O'Brien,* for Meyrose.

TREAT, J., (*orally.*)   I have had many matters under advisement which I think should be disposed of now, as we are nearing the end of the term.   And first are these patent cases with regard to the manufacture of lanterns, No. 2,553, against the St. Louis Railway Supplies Manufacturing Company.   I find that the demand of the plaintiff is

---

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

on the first claim of 104,318, and the first and second claim of 151,703. These matters were particularly before Brother BREWER and myself, with the light shed upon the cases by Judge SHIPMAN with regard to a like demand before him,[1] followed by a great many preliminary injunctions. Instead of following the ordinary course, which is to grant an injunction, provided the proofs of infringement appear, when the validity of the patent has been established in some other court on the merits, this case was presented at great length. Deferring, to a large extent, to what has been done elsewhere with regard to these matters, still the question remains about which there is a great deal of doubt to be determined on final hearing. Taking the statement of defendant's counsel as to the interruption of his business, instead of granting an injunction *simpliciter*, the order will be that the restraining order heretofore granted is dissolved, that the defendant give bond in the sum of $20,000 within five days, and keep an account of all sales, to answer to any damages that may be hereafter found against him, in default of which the injunction will issue.

I am not disposed this morning to go into an analysis of these matters, because I do not choose, nor do I think it very prudent, to anticipate on this motion what may be the ultimate merits, and I think comments should be reserved for final hearing. True, it is very persuasive to this court that Brother SHIPMAN has gone over these matters. I have also gone over them in a painstaking way, and Brother BREWER, in a cursory way, because his engagements did not permit him to go into the inquiry to a very considerable extent. The order which I have just directed to be given, however, has his full concurrence. He thought that would be a proper solution, and would give further time to examine the merits. The patent 104,318 is not new in regard to the general elements of these cases. The party supposes he has discovered a principle, and he thinks that any sort of device which covers that principle is within the terms of his patent. This court does not admit that. It is the device by which he may avail himself of the beneficial influence of his principle, and this court always restricts a party to his device. I think that is the meaning of all the rulings of the supreme court. A great deal has been said here concerning an irreversible current. I suppose it requires no large amount of ordinary experience to realize that where there is an ascensive current, as it was called here, there must be a supply of air from some source, for nature abhors a vacuum. How shall it be done? By what beneficial influence, and by what devices? That is all I choose to say this morning in regard to it. The order will be that the restraining order heretofore granted be dissolved, and that the party give bond in the sum of $20,000 for any damages that may be awarded, and keep an account of sales; conditioned, however, if he does not give that bond within five days the injunction will go.

[1] Steam Gauge & Lantern Co. v. Miller, 21 Fed. Rep. 514.

Mr. Judson here suggested that the same object would be gained by granting the injunction upon condition that the complainant give a bond to protect the defendants against any damage they may suffer by reason of the injunction, in case it is dissolved on final hearing.

*The Court.* I shall not grant it. I have said all that I choose to say. The case, as it is presented to me now, must go to a hearing, because I am not satisfied that Brother SHIPMAN reached a right conclusion with regard to it. That is all there is of it. I will not grant an injunction *simpliciter* in this or any other patent case until it is so made out *ex parte,* and practically this is *ex parte,* as to show that a party ought to be stopped from doing what is a clear and positive infringement. In regard to patent 104,318 the invention is peculiar. It has been before the court. Whether this defendant has ever infringed is a very doubtful question in my mind, and in regard to 151,703 the evidence submitted by way of affidavit makes the question very doubtful also. Admitting that the patent is entirely valid, which I take for granted, for the present purposes I think equities require the result which I have reached, and such was the opinion of Brother BREWER; only, as I stated to you, he desired, as he was very busy, that I would go through the case more in detail than he had been able to do. Ordinarily these matters are decided on what you may call the first impression. That was our first idea of the case. Then I examined at large to see whether I would grant an injunction *simpliciter,* or whether the order should be as I have given it. After having spent weeks of time on the matter, I have reached the conclusion that the resulting order is correct, and that the rights of all parties will be preserved by leaving the case as already ordered.

*Mr. Judson.* My suggestion was not to question your honor's conclusion, but simply to change the form of condition by requiring us to give bond on which we can be held responsible if our case was not sustained on final hearing; that is, that we give bond in such sum as will amply indemnify the defendant, and will be satisfactory to him.

*Mr. Bakewell.* We will not be satisfied with that.

*Mr. Judson.* We think, under the situation of the case, that will protect everybody.

*The Court.* I wish to say this: I have never seen any occasion to change my views with regard to matters of this kind. A man has a patent *prima facie* valid. Should he have an injunction *simpliciter* for the asking? This court has never chosen to grant that, and until the supreme court changes its ruling it never will rule any other way; at least, as long as I am on this bench. The law appertaining to patent cases in equity is like the law appertaining to all other equity cases. We preserve the rights of parties without doing any unnecessary wrong to either one, and an injunction *simpliciter* never goes except under extraordinary circumstances. Now, this matter

has been before this court in various forms with regard to the controversy. I do not know whether this party plaintiff grants licenses, deals in royalties, or what he does. If he does, the amount of his royalties or licenses would cover everything equitable. I have not gone into that inquiry at all. Now, in regard to these Meyrose matters, 2,551 was on the first claim, patent 104,318, and first and second claims of 151,703. True, under 151,703, in his publications, he intimated he was going to do what he never did; that is, in the light of the testimony submitted to the court. I shall require him to give bond for $5,000. He did not acknowledge, as Mr. Chandler did for the Railway Supplies and Manufacturing Company, that an enormous sum of money was involved. Nothing of that kind appears here, and so I shall fix the bond at $5,000, and a like order will be issued in 2,552. Now, it is not advisable to express the opinion of the court in regard to 2,552 on its merits. It is alleged herein, in a long plea, averring that I, between these very parties, passed on this question some years ago; and on that matter a legal argument is presented. Perhaps what I may order hereafter will be otherwise. A like bond is ordered in this case.

*Mr. Chandler.* That bond payable to the plaintiff?

*The Court.* Yes; make it payable to the plaintiff to answer to any damages that may be awarded against him for an alleged infringement; said bond to be approved by the clerk. In regard to the other matter connected with these last cases I have not had time to look at it, but I will do so at an early day.